UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.
                              Case No. 15-cr-20442
                              District Judge Paul D. Borman

DAVON KEMP,

      Defendant.                /

**ORDER DENYING DEFENDANT'S "MOTION FOR COMPASSIONATE
RELEASE PURSUANT TO 18 U.S.C. § 3582(c)" (ECF NO. 313)**

On August 21, 2020 Defendant filed a Motion for Compassionate Release

Pursuant to 18 U.S.C. § 3582. Defendant cites as CONTROLLING AND

PERSUASIVE AUTHORITY:  18 U.S.C. § 3582, U.S.S.G. § 1B1.13, and the case

of "*United States v. White*, Case No. 13-20653 [ECF No. 54] (E.D. Mich., May 20,

2020)." [Leitman, J.] (ECF No. 313, Page ID 3452.).

Defendant states that he:

> [i]s a 34-year-old African American inmate currently
> serving a 180-month sentence following his conviction
> on a single count of attempted possession with intent to
> distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1)
> and 846, and 18 U.S.C. § 2. See PSR, ¶ 3, Pg. 4:  Dkt.
> 208. Kemp was acquitted of the more serious charges of
> conspiring to possess, to possess with intent to distribute
> cocaine and heroin and he was also acquitted of the
> 924(c) charge of possessing a firearm in furtherance of a
> drug trafficking offense. Defendant is currently housed at

1

> FCI Safford in Arizona. Defendant's release date is
> scheduled for August 2029.

(ECF No. 313, Page ID 3453.)

Defendant concisely summed up the prerequisites to the Court's

consideration of compassionate release:

> In sum, a defendant seeking compassionate release must
> present extraordinary and compelling circumstances,
> must have § 3553(a)'s sentencing factors weighing in his
> favor, must not be a threat to others as determined by §
> 3142(g), and must fit within one of the four categories in
> § 1B1.13 of the Sentencing Guidelines.

(Defendant's Motion, ECF No. 313 at Page ID 3454.)

As to the relevant first prerequisite set forth in 18 U.S.C. § 3582(c), that

there has been a lapse of 30 days from submitting his request to his warden on July

13, 2020, to bring a motion on Defendant's behalf, on August 3, 2020 his warden

denied his request, and Defendant filed his Motion in this Court on August 21,

2020. (ECF No. 313, Page ID 3455.) The Court finds that Defendant has satisfied

this prerequisite.

Defendant contends that he has presented "extraordinary and compelling"

medical circumstances because he is being treated for hypertension for which he

takes medications, suffers from obesity with a Body Mass Index (BMI) of 35 (5'

8", weighs 234 lbs.), and suffers from sleep apnea, for which he uses a CPAP

machine. (*Id*. at Page ID 3455-3456.) Defendant contends that the health

2

conditions at FCI-Safford render him at high risk from the COVID-19 illness. In addition, Defendant asserts that as an African American, he has a higher risk category if he contracts COVID-19, which is more likely to occur in a prison setting where social distancing is not possible.

Defendant notes that in *United States v. White*, *supra*, Judge Leitman granted compassionate release to a defendant, incarcerated at FCI-Milan, who suffered from hypertension and obesity (BMI of 38.6--5' 8" and 254 lbs.) This Court notes that in granting White's release, Judge Leitman stated in his opening paragraph, and again on pages three, 15 and 16, that White had served more than 80 percent of his 120-month sentence. *United States v. White*, *supra* (ECF No. 54).

Defendant notes that "at present [8-21-2020] there have been several confirmed cases of the virus at FCI Safford between inmates and staff such that there is a strong likelihood of further community spread." (ECF No. 313, Page ID 3461.) The Court notes that on September 18, 2020, the BOP COVID report stated that there were 0 (zero) COVID-19 inmate positive cases at FCI-Safford, two positive staff COVID-19 cases, and two inmates have recovered from COVID-19. (Phone call, BOP regional supervisor, Tracy Knutson, St. Louis, MO, 9-22-2020.)

Defendant states that "both Eighth Amendment and Due Process concerns" would arise if he is not released to home confinement because he is "a non-violent, non-dangerous offender…with serious medical conditions." (*Id*. at Page ID 3461.)

3

The Sixth Circuit has recently rejected an Eighth Amendment claim that the BOP has exhibited deliberate indifference to the COVID-19 pandemic, and pointed out that the BOP has put in place and updated its protocols to address the risks from COVID-19. *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020).

Defendant claims that he "poses no danger to the safety of any other person or the community," as evidenced by the fact that he has no BOP misconduct issues, and is permitted to leave and return to the institution for various work-related functions outside the prison. (BOP regional supervisor Tracy Knutson noted that a prisoner with a gate pass to work outside of the prison proper, is still within the prison's perimeter. Phone call 9-22-2020.)

On September 1, 2020 the Government filed an Amended Response in Opposition (ECF No. 319), pointing out that Defendant had arranged in Arizona for 25 kilograms of cocaine to be delivered to Detroit to be distributed, that he has served less than four years of his 15-year sentence, and "Even if his obesity qualifies as an 'extraordinary and compelling' in light of COVID-19, Kemp should not be released before his scheduled date--he remains a danger to the community, which forecloses relief under U.S.S.G. § 1B1.13(2)…Likewise, § 3553(a) factors--which the Court must also consider under § 3582(c)(1)(A)--do not support release." (*Id*. at Page ID 3667-3668.)

4

The Government points out:

> As the leader, Kemp directly negotiated  the prices and
> terms of three separate drug deliveries with the source of
> supply. When the kilograms arrived in Detroit, Kemp
> travelled from Arizona to oversee their distribution.

(*Id*. at Page ID 3668.) The Government notes that a loaded high-powered SKS rifle

with a large-capacity magazine was in the entryway closet at the apartment Kemp

and his co-conspirators used, and where Kemp's computer and mattress were

found. (*Id*. at Page ID 3669.)

The Government further noted that upon conviction, Judge Gerald Rosen

(retired), detained Defendant, and subsequently imposed a sentence of 15 years

(180 months) "for his role as a leader in trafficking multiple kilograms of cocaine,

and then denied his request for release pending appeal." (*Id*. at Page ID 3670.)

The Government summarizes the parameters of the Court's necessary

considerations and limitations with regard to compassionate release:

> Even if a defendant is eligible for compassionate release
> because they properly exhausted their administrative
> remedies and the record supported the assertion that their
> medical condition qualifies as "extraordinary and
> compelling," the district court may not grant the motion
> if he is "a danger to the safety of any other person or to
> the community" and the factors in 18 U.S.C. § 3553(a)--
> defendant's history and characteristics, the seriousness of
> the offense, the need to promote respect for the law, and
> provide just punishment for the offense, general and
> specific deterrence and protection of the public--do not
> support release. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. §
> 1B1.13.

5

(*Id*. at Page ID 3575-76.)

As to Defendant's medical condition claims--obesity, hypertension and sleep apnea--the Government asserts that the CDC does not list sleep apnea as a COVID-19 risk factor, and that his primary hypertension is being treated with medication. Further, although the CDC acknowledges that individuals with a BMI of 30 or higher are at increased risk for effects of COVID-19, and that qualifies as an extraordinary and compelling medical condition, that only meets the first eligibility threshold for compassionate release, and does not require the Court to grant compassionate release (*Id*. at page ID 3678), because he is a danger to the community:  he has five prior convictions escalating in seriousness to the instant offense, where he was the leader/organizer of this conspiracy. The Government concludes that dangerousness alone is a *per se* ban to release. (*Id*. at Page ID 3680.) In discussing the 3553(a) factors, the Government states that because Defendant has served less than four years of his 15-year sentence, the Court should conclude that it would not promote respect for the law or provide deterrence and just punishment for his serious offense to grant him compassionate release. The Government further notes that in *United States v. White*, *supra*, the defendant had served more than 80 percent of his sentence.

The Court notes that a recent Sixth Circuit Opinion, *United States v. Kinkaid*, 805 F. App'x 395, 395-396 (6th Cir. 2020) approves of a court's

6

consideration of the percentage of time served in its required discussion of these

3553(a) factors:

> District courts routinely weigh whether a certain amount
> of time served is "sufficient but not greater than
> necessary" to serve § 3553(a)'s purposes. That's what
> happens at sentencing. A district court may use that same
> calculus when deciding whether to grant a motion for
> compassionate release.

Defendant's Reply filed on September 2, 2020 (ECF No. 321) reiterates that

he is not a danger to the community because the Government did not even seek

pretrial detention, and that since incarcerated he has no BOP misconducts, and

does landscaping outside the FCI-Safford walls.

## DISCUSSION

Because of the importance of the Court's consideration of the overriding

factor contained in both § 3582, and U.S.S.G. § 1B1.13(2)--danger to the

community--the Court sets forth additional relevant information on that issue

contained in the Defendant's Presentence Investigation Report prepared by the

Court's probation department:

> Page 5, ¶ 9:
> On at least one occasion the Defendant spoke to his
> pretrial services officer in a verbally abusive manner at
> which time he used expletives and racial epithets directed
> at the officer…after the…officer advised KEMP he was
> to apprize the officer of his schedule so his departures
> from home could be authorized and monitored.

Page 6, ¶ 16:
Agents recovered from apartment 312:  …KEMP's
MacIntosh computer (kitchen); and a SKS 7.62 assault
rifle loaded with a high-capacity magazine (open front
closet)….

Page 7, ¶ 21:
KEMP was looking [in Arizona] for a source of supply
for cocaine to be distributed by KEMP in the Detroit
area…KEMP negotiated a price of $34,000 per kilogram
of cocaine and advised Islava-Sanchez he could move
between eight and 12 kilograms of cocaine in
approximately two weeks' time….KEMP purchased
inflatable beds to utilize while staying at the apartment
awaiting the cocaine shipment.

Page 10, ¶ 31:  [Role in the offense]
Organizer/leader
DAVON KEMP

With regard to Defendant Kemp's medical claims, the Court finds the

relevant following information from his 2017 Presentence Report:

[D]efendant denied being diagnosed or treated for any
chronic illness and/or medical condition.  He is not
currently taking any prescriptions medications and
denied having any allergies.

PSR, Page 18, ¶ 64. Further, the Court notes that Defendant's blood pressure on

August 12, 2020 was 133/87. (ECF No. 320, Page ID 3726.)

With regard to the 18 U.S.C. § 3553(a) factors, the Court finds:

(1)     The nature and circumstances of the instant
        offense are very serious; Defendant was the
        organizer and leader of a prolonged large-scale
        cocaine trafficking organization. Defendant

possessed a high-powered rifle with a large-capacity magazine in the apartment in which he slept and in which he kept his computer and mattress. Defendant's criminal history convictions place him in Criminal History Category III.

(2)     Defendant has served only four years of his 180-month sentence. There is a need for a very significant part of that sentence to be served to promote respect for the law, to provide just punishment for the organizer/leader of a large-scale drug trafficking operation, and to deter others from engaging in such serious criminal conduct. The Court also concludes that given the significant planning of this multi-state enterprise, the possession of a high-powered rifle, and his leadership skills which were used to create this multi-state operation, there is a need to protect the public from further crimes of Mr. Kemp if he were to be released.

## CONCLUSION

The Court concludes that Defendant Davon Kemp does not qualify for compassionate release because if released he would be a danger to the community.

The Court can only consider Defendant's claims of Extraordinary and Compelling Reasons as set forth in U.S.S.G. § 1B1.13 cmt. App. Note 1, "provided the defendant meets the requirements of subdivision (2) to § 1B1.13: (2): "the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g)." The Court finds, pursuant to the 18 U.S.C. 3142(g) factors that there are no conditions of release that will reasonably assure the safety of the community. The Court further finds that the application of the 18

9

U.S.C. § 3553(a) factors support the Court's denial of Defendant's compassionate release.

Thus, after considering the strict limiting preconditions contained in 18 U.S.C. § 3582(c)(1)(A), which requires that he Court consider the 18 U.S.C. § 3553(a) factors, and after considering the strict and limiting conditions in U.S.S.G § 1B1.13(2), which incorporates the need to consider both 18 U.S.C. 3553(a) and 18 U.S.C. § 3142(g), the Court concludes that Defendant Davon Kemp, the leader of this large-sale drug conspiracy, who coordinated both the large-scale purchases in Arizona and the shipments to Detroit, who oversaw the "drug house" where he slept and to which the drugs were delivered, and which was protected by the heavily-armed firearm, would be a serious danger to the community if released.

In discussing Defendant's medical claims, the Court concludes that his BMI index does not require his release. There is no evidence that Defendant Kemp is presently suffering from a serious medical condition that substantially diminishes his ability to provide self-care, and from which he is not expected to recover as required in U.S.S.G. § 1B1.13 (App. Note 1(A)(ii)). Finally, the Court concludes that, in this case, the fact that the Defendant is an African American, and the fact that he has a BMI of 35, do not support granting his request for compassionate release from FCI-Safford.

Accordingly the Court DENIES Defendant Kemp's Motion for

Compassionate Release.

SO ORDERED.

DATED:  September 24, 2020          s/Paul D. Borman
                                    PAUL D. BORMAN
                                    UNITED STATES DISTRICT JUDGE

11